482 So.2d 226 (1986)
Mary Carol HUDSON
v.
KEYSTONE SENECA WIRE CLOTH CO., and Travelers Ins. Co.
No. 55912.
Supreme Court of Mississippi.
January 15, 1986.
Jim Phyfer, Jackson, for appellant.
Donald V. Burch, Daniel, Coker, Horton & Bell, Jackson, for appellees.
Before ROY NOBLE LEE, P.J., and HAWKINS and ANDERSON, JJ.
HAWKINS, Justice, for the Court:
This is an appeal from a judgment of the circuit court of Lincoln County reversing the order of the Workmen's Compensation Commission affirming an order of an attorney referee awarding compensation. We affirm, agreeing with the circuit court that the decision by the Workmen's Compensation Commission was against the overwhelming weight of the evidence.

FACTS
On April 14, 1981, Mrs. Mary Carol Hudson filed a motion to controvert, to which an answer was made. She alleged two work related injuries, one to her back on June 18, 1979, and one to her foot on March 11, 1980. The employer carrier admitted the leg injury and compensated Mrs. Hudson for it. The sole question on this appeal concerns the back injury Mrs. Hudson allegedly incurred while in the employ of the Keystone Seneca Wire Cloth Company on June 18, 1979.
When the matter came for hearing, Mrs. Hudson testified that on June 18, 1979, while pulling a roll of wire, she injured her low back. She stated that she informed a fellow employee of the back injury, and that on the following day, June 19, 1979, she consulted Dr. A.L. Lott of Brookhaven for her back injury. She further testified that on Dr. Lott's advice, she remained in bed and returned to work on some date after July 4, 1979. The plant was closed for approximately seven days following July 1, 1979, and Mrs. Hudson actually returned to work when the plant re-opened.
Mrs. Hudson testified that she experienced back pain and had a burning sensation down her right leg. She further stated that she was never able to adequately perform her job following this injury. Dr. Lott did not testify in this cause. Mrs. Hudson stated that she could not remember whether or not she informed her supervisor, Helen Munn, that she had hurt her back on June 18, 1979.
Mrs. Munn testified that Mrs. Hudson did not inform her on June 18, 1979, that she had injured her back, nor did she ever inform her of a back injury. The absentee report prepared by Mrs. Munn on June 18, *227 1979, establishes that Mrs. Hudson worked four hours and was then allowed to go home due to sickness. The absentee report for June 19, 1979, establishes that Mrs. Hudson worked seven and one-fourth hours on that date and was allowed by her supervisor to go home due to sickness.
Mrs. Hudson subsequently saw five doctors, at least two of whom were orthopedists, for various ailments during a period of time in which she was allegedly experiencing back pain. She did not relate to any of these doctors that she was suffering from back pain.
Mrs. Hudson's primary doctor for the back injury was Dr. John Carl Passman, an orthopedic surgeon. He initially saw Mrs. Hudson on May 28, 1980, almost a year after she sustained the back injury. At that time Mrs. Hudson gave Dr. Passman a history of an injury to her low back in June of 1979. She told Dr. Passman that her low back pain had persisted since that time and that she had not had any leg pain until she dropped a spool on her right leg on March 11, 1980.
Mrs. Hudson sustained a further injury in April of 1981 when her 120 pound daughter fell on her.
Dr. Passman gave his opinion that Mrs. Hudson's back injury was work related, based almost entirely upon the history which she had related to him.
Ruth O. Williamson, a co-employee of Mrs. Hudson at the time of the injury, testified that she remembered Mrs. Hudson telling her sometime before August of 1979 that she had hurt her back. Williamson testified that Mrs. Hudson went home sick one night without telling her why, and when she returned the following Sunday night, she told her that she had hurt her back. Williamson testified that she had to help Mrs. Hudson to get her work done after that.
The administrative judge awarded compensation to Mrs. Hudson, which was appealed to the full commission. The full commission affirmed the decision of the administrative judge and an appeal was taken to the circuit court, where the circuit judge reversed. The circuit judge reversed, finding that there was not sufficient evidence to prove that the employee suffered an injury in the course and scope of her employment or that such injury, if any, had any causal connection to the disability, if any. Her conduct after June 18, 1979, was so inconsistent with that of any employee injured in the course of employment as to cause a loss of credibility. The circuit judge further cited the fact that it is generally known that reasonable patients related injuries that may have causal connection to a disability to their physicians. The circuit judge observed Mrs. Hudson's delay in bringing the injury to the attention to their employer, noting that the employer was not required to furnish medical attention or pay hospital or doctor bills from June 18, 1979, until April 14, 1981, for this injury, even though payment had been made to the employee for the injury of March 11, 1980.

LAW
We are bound by law to follow the decisions of the Workmen's Compensation Commission when they are supported by substantial evidence or are not manifestly wrong. Here we must find the circuit judge was correct in holding that the Workmen's Compensation Commission did not have sufficient evidence to support an award of compensation to Mrs. Hudson for the alleged injury on June 18, 1979.
The behavior of Mrs. Hudson following her alleged injury on June 18, 1979, defies human experience and belief. She was a high school graduate and it is inconceivable that she would not have said something to her supervisor about having sustained an injury on the job when on that same day she requested and was granted permission to go home on account of sickness.
Dr. Passman's initial consultation with Mrs. Hudson was almost a full year after the injury. While a history given a treating physician is of utmost importance in diagnosing and treating illness and injury, the history in this case is not of major *228 significance. It was taken almost a year after the alleged injury. At that stage Dr. Passman was in no better position than anyone else, based solely on the history she gave, to pinpoint this one event of June 18, 1979, as the cause of her back problem. It was a "cold" history. Furthermore, in the meantime she had been seen and treated by several other physicians, two of them orthopedists, and failed to mention any back injury. A back injury is not ordinarily a condition in which the patient is taciturn. There is an inclination to sing its praises. In Hamilton Manufacturing Co. v. Kern, 242 So.2d 441 (Miss. 1970), we held:
Whether the evidence is sufficient is the only factual determination appellate courts have the right to decide. It is the duty of the circuit court to affirm the commission's findings if they are supported by substantial evidence, or are not manifestly wrong. The record fails to disclose that any action or incident was sustained by the appellee "arising out of and in the course of his employment" except for the testimony of the appellee alone. Fellow employees working in close proximity to appellee testified that they saw no accident, nor did the appellee while at work complain or advise them on April 5, 1968, of any injury he had sustained.
As in Hamilton, there were no eyewitnesses to Mrs. Hudson's injury, and we have only her testimony and the testimony of those she informed to substantiate it.
After a careful review of the facts and evidence in this case, we are unable to say that the circuit judge was manifestly wrong in finding that the decision of the Mississippi Workmen's Compensation Commission was against the overwhelming weight of the evidence.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.